FOR THE UNITED STATES DISTRICT COURT
IN THE DISTRICT OF NEW MEXICO

DENISE I. WORKHEISER,

    Plaintiff,

    v.                                                  CIV. No. 12-485  JB/GBW

CITY OF CLOVIS,

    Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

    This matter is before the Court on Defendant's Motion for Summary Judgment. *Doc. 18.*   I have reviewed the parties' briefing (*docs. 19, 20, 21, 22*) and the relevant law. I find Defendant's motion well founded, and I recommend that the Court dismiss Plaintiff's action.

I.    BACKGROUND

    Plaintiff is a former employee of Defendant. Plaintiff began her career with Defendant in August 1997.  *Doc. 1* ¶ 1; *Doc. 19* at I.A.1.  Plaintiff was promoted several times throughout the course of her employment, culminating in her assumption of the role of Executive Administrator to the Fire Department in March of 2008.  *Doc. 1* ¶ 1; *Doc. 19* at I.A.2-5.  Prior to Plaintiff taking this position, her performance reviews were good to excellent, and her work history with Defendant was described as "very solid and positive." *Doc. 19* at I.A.3 & Ex. A ¶ 4.  Further, by 2008 Plaintiff had successfully

completed several college courses as well as vocational courses related to her work with Defendant. *Doc. 19*, Ex. A ¶¶ 5, 7.

At no time prior to her becoming Executive Administrator did Plaintiff inform Defendant that she had any medical (including psychological) disability or that she required any type of accommodation to facilitate her performance at work. *Id.* at ¶ 8. Plaintiff states that she did not request any accommodation because she was unaware of her condition prior to December 8, 2009. *Doc. 21* at 2-3. Plaintiff does assert, however, that prior to 2008, her coworkers were aware that she "'worked in layers'", "needed to seclude herself" to complete complex tasks, and used a variety of methods to ensure the timely completion of work responsibilities. *Id.* at 2.

As Executive Administrator, Plaintiff reported to Ray Westerman, Fire Chief for the City of Clovis. *Doc. 19, Ex. B* ¶¶ 1-2. Her initial performance review from Chief Westerman on July 10, 2008, was generally positive (*id*. ¶ 7 & ex. B(6)) as were her performance reviews in October 2008 and June 2009 (*id.* ¶ 8 & exs. B(7)-(8)). At some point, apparently in 2009, Plaintiff began to suffer a variety of ailments including anxiety, inability to focus or concentrate, and rapid weight gain. *Doc. 21* at 2. She initially sought treatment from her personal physician, who referred her to Mary Cathy Woodard, a licensed clinical social worker. *Id.* Ms. Woodard diagnosed Plaintiff with ADHD on December 8, 2009, and Plaintiff began to receive treatment for her condition. *Id.* at 2-3.

Plaintiff claims that on December 9, 2009, Plaintiff met with Chief Westerman to discuss her new diagnosis. *Id.* at 3, 5; *Doc. 1* ¶ 4. Chief Westerman contests this account, stating that he was unaware of her condition prior to September 16, 2010. *Doc. 22*, Ex. C ¶¶ 2, 9. In a subsequent performance review on April 1, 2010, Chief Westerman gave Plaintiff a poor review, including comments that Plaintiff had a "lack of consideration for thoroughness, neatness and accuracy", "[became] distracted easily", "lack[ed] initiative," and generally failed to acquire the skills necessary to perform her position. *Doc. 19* at I.D.10 & Ex. B ¶ 9, ex. B(9). Plaintiff did not at the time rebut Chief Westerman's review, which she acknowledged with her signature. *Id.* at I.D.11 & Ex. B ¶ 9, ex. B(9). Plaintiff, however, now contends that Chief Westerman gave her a poor review as a result of her revelation of her ADHD diagnosis on December 9, 2009. *Doc. 21* at 3, 5.

On September 16, 2010, Chief Westerman gave Plaintiff a Notice of Intent to Terminate based on her April 1, 2010 performance review as well as her subsequent failure to obey a direct order from Chief Westerman in relation to a billing issue. *Doc. 19* at I.E.14; *Doc. 21* at 3-5; *Doc. 22*, Ex. C ¶ 8. Chief Westerman met with Plaintiff on September 20, 2010 to discuss her termination. *Doc. 19* at I.E.16 & Ex. B ¶ 11, ex. B(10). At that time, Plaintiff submitted a request for reasonable accommodations for her ADHD to Chief Westerman, along with a letter from Ms. Woodard attesting to

Plaintiff's diagnosis of ADHD.  *Doc. 21* at 5; *Doc. 22*, Ex. C ¶ 2; *Doc. 19*, Ex. B ¶ 11, ex. B(11).   On September 23, 2010, Plaintiff was terminated.  *Doc. 19*, Ex. B(10).

Plaintiff filed her complaint against Defendant on April 13, 2012 in the Ninth Judicial District Court of the State of New Mexico.  *Doc. 1,* Ex. A.  In her complaint she states that she filed her action in order to preserve her right to sue per Equal Employment Opportunity Commission ("EEOC") Charge No. 846-2010-86550.  *Id* ¶ 6. On May 7, 2012, Defendant removed the case to this Court.  *Doc. 1*.  Defendant filed its Motion for Summary Judgment on September 10, 2012.  *Doc. 18*.  Briefing was completed on October 8, 2012.  *Doc. 23*.

## II.   STANDARD OF REVIEW

Claims brought under the American with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, are subject to motions for summary judgment under Federal Rule of Civil Procedure 56.  *Miller ex. rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Schs.*, 455 F. Supp. 2d 1286, 1313 (D.N.M. 2006).  Rule 56(a) requires that a party seeking summary judgment demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of "show[ing] 'that there is an absence of evidence to support the nonmoving party's case.'"  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)) (internal quotation marks omitted).

Summary judgment is proper only if a reasonable trier of fact could not return a verdict for the nonmoving party. *Celotex*, 477 U.S. at 323. Once the movant meets this burden, Rule 56(e) requires the non-moving party to designate specific facts showing that "there are. . .genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex*, 477 U.S. at 324. Further, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

The court must adhere to three principles when evaluation a motion for summary judgment. First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial. *See Liberty Lobby*, 477 U.S. at 249. Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party. *See Hunt v. Cromartie*, 526 U.S. 541, 551–54 (1999). Third, the court cannot decide any issues of credibility. *See Liberty Lobby*, 477 U.S. at 255. "[T]o survive the . . . motion, [the nonmovant] need only present evidence from which a jury might return a verdict in his favor." *Id*. at 257.

### III. ANALYSIS

The ADA is designed to protect individuals with disabilities from employment discrimination. 42 U.S.C. § 12112(a).   In an ADA-based employment termination claim, the following elements are required to establish a *prima facie* case of disability discrimination: (1) that the employee is disabled within the meaning of the ADA; (2) that the employee is qualified, with or without reasonable accommodation, to perform the essential functions of the job; and (3) that the employer terminated the employee because of her disability. *Robert v. Bd. of County Comm'rs of Brown County, Kan.*, 691 F.3d 1211, 1216 (10th Cir. 2012).

A person may be classified as disabled, and therefore protected by the ADA, if that person (1) has a physical or mental impairment that substantially limits one or more major life activities, or (2) has a record of such impairment, or (3) is perceived as having such impairment.  42 U.S.C. § 12102(1).  A person alleging a disability must show that it substantially limits a major life activity in order to be covered by the ADA. *Johnson v. Sedgwick County Sheriff's Dep't*, 461 F. App'x 756, 759 (10th Cir. 2012).  As the Tenth Circuit explained in *McGeshick v. Principi*, 357 F.3d 1146, 1150 (10th Cir. 2004):

> To be substantially limited in a major life activity, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. . . . To evaluate whether a claimant is disabled from working, we consider whether the claimant is unable to perform the variety of tasks central to most people's daily lives, **not whether the claimant is unable to perform the tasks associated with [his] specific job**.

6

(Internal quotations and citations omitted) (emphasis added). Plaintiff alleges that Defendant discriminated against her, in violation of the ADA, when it refused to provide her with accommodations for her ADHD and when it then terminated her on the basis of her ADHD.  *Doc. 1*, Ex. A ¶ 1; *Doc. 21* at 5-6.  But, neither Plaintiff's Complaint nor her response to Defendant's Motion for Summary Judgment presents evidence that her ADHD in any way substantially prevented Plaintiff from undertaking any major life activity.

In contrast, Defendant submits ample evidence that, in spite of Plaintiff's diagnosis of ADHD, Plaintiff was a high functioning individual. For example, Plaintiff was steadily employed by Defendant for approximately thirteen years, during the vast majority of which time she was considered a valuable employee.  *Doc. 1*, Ex. A ¶ 1, *Doc. 19* at I.A.2-5 & Ex. A ¶ 4.  Plaintiff also completed college level courses and vocational training courses. *Doc. 19* at I.A.2-5, Ex. A ¶ 5-7.   At most, it appears that Plaintiff's claims about how her ADHD affected her, such as her need to close the door to her office in order to concentrate on certain tasks, illustrate the impact of her condition on her ability to perform job related duties and assignments.

Plaintiff in fact provides no evidence of the impact of ADHD on her ability to perform tasks central to her day-to-day life, as is required to establish that she qualifies as a disabled person under the ADA.  While Plaintiff's pleadings are construed liberally by the Court because she appears *pro se*, she is still held to the same procedural

requirements as any other party.  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).  Even treating Plaintiff's verified Complaint as an affidavit for the purposes of summary judgment (*see Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988)), Plaintiff fails to submit any evidence that would show that her ADHD has had a significantly negative impact on her daily life, which would in turn make her eligible for protection under the ADA.

Nor can Plaintiff show that she was perceived to have an impairment that prevented her from undertaking any major life activity.  In order to show that Defendant perceived Plaintiff as disabled under the terms of the ADA, Plaintiff must "demonstrate that [her] employer regarded [her] as significantly restricted in performing either (1) a class of jobs; or (2) a broad range of jobs in various classes." *Dillon v. Mountain Coal Co., L.L.C.*, 569 F.3d 1215, 1218 (10th Cir. 2009).  Even if the Court considers Plaintiff's statements about the manifestation of her ADHD at work set forth in her response brief[1] and  construes Plaintiff's pleadings liberally, Plaintiff still has not shown how her ADHD would create a perception of her as disabled. At most, Chief Westerman was aware of Plaintiff's need to shut her door and use timers to help her keep on task.  None of these actions lead to the reasonable inference that Chief

---

[1] The Court notes again that while Plaintiff describes the effect of her ADHD on her work habits  in her response brief (*doc. 20*), this document is not a verified pleading submitted under penalty of perjury and the Court cannot consider it as evidence in ruling on the instant motion.  *See* Fed. R. Civ. P. 56(c), 10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus, Federal Practice and Procedure § 2721 (3d. ed. 2012)(" an adverse party may not rest on mere allegations or denials in the pleadings. The opposing party must present evidentiary matter showing that there is a genuine issue of material fact that is worth bringing to trial").

Westerman regarded her as significantly restricted in her ability to be an Executive Administrator.  Nor is the fact that Plaintiff provided Chief Westerman with Ms. Woodard's letter sufficient to create a perception of disability, not only because it was only provided in September 2010, but also because it merely states that Plaintiff has ADHD and requires reasonable accommodations, with no further description of how Plaintiff's ADHD actually impacts her life.  *Johnson*, 461 Fed.Appx. at 759 (explaining that a medical report describing a condition on for which a person is claiming disabled status under the ADA must explain how that condition imposes a substantial limitation on a major life activity). There is simply no basis on which Plaintiff can demonstrate that Defendant should have perceived her to be disabled under the ADA.

Plaintiff's claim for relief is dependent on her qualification as disabled under the ADA. *See Robert*, 691 F.3d 1216.  Having presented no evidence to substantiate that claim, Plaintiff cannot show that she is entitled to bring a claim of employment discrimination under the ADA.  Plaintiff cannot, therefore, raise a genuine dispute of material fact that precludes the Court from granting summary judgment in favor of Defendant. *See Woods-Gaston v. Sequoyah Enter., Inc.*, 340 F. App'x 450, 452 (10th Cir. 2009) (plaintiff's failure to respond to defendant's motion for summary judgment or provide evidence to support her claims of discrimination was not excused by her *pro se* status, and her failure to provide such evidence rightfully resulted in the dismissal of her action).

## IV.   CONCLUSION

For the forgoing reasons, I recommend that the Court finds that Defendant has met its burden of showing that it is entitled to judgment as a matter of law under Federal Rule of Civil Procedure 56 and that the Court grant Defendant's Motion for Summary Judgment.

_____

GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---